Ninth Circuit No. 16-30174
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT
_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>DAVID LEE FRY,<br><br>Defendant-Appellant. | U.S. Court of Appeals<br>No. 16-30174<br><br>U.S. District Court<br>No. 3:16-CR-00051-13-BR<br>(Oregon) |

APPELLANT'S MEMORANDUM OF LAW
AND FACTS IN SUPPORT OF APPEAL
_____

On Circuit Rule 9-1.1 Appeal from the United States District Court
District of Oregon
Honorable Anna J. Brown (trial judge)
Honorable Robert E. Jones (judge on release decisions)
_____

Per C. Olson, OSB #933863
Hoevet Olson Howes, PC
  1000 S.W. Broadway, Suite 1500
  Portland, OR 97205
  Telephone: (503) 228-0497
  *Attorney for Appellant*
_____

## Preliminary Statement

This is an appeal from orders of pre-trial detention. The district court has jurisdiction over this criminal matter pursuant to 18 USC § 3231. The Ninth Circuit Court of Appeals has jurisdiction over this appeal of a detention order pursuant to 18 USC § 3145(c) and 28 USC § 1291. The notice of appeal was timely filed on July 20, 2016, from the denial of a motion to reopen the detention hearing on July 13, 2016. FRAP 4(b)(1)(A)(i).

This memorandum of law and facts in support of the appeal is filed pursuant to Circuit Rule 9-1.1.

## Issue Presented for Review

Did the district court error in denying defendant pre-trial release in this matter by making erroneous factual findings, and should this Court, after its independent review of the record, determine that release is warranted?

## Procedural History

Defendant David Fry and 27 others are charged in a Superseding Indictment alleging, as relevant to Mr. Fry, a Conspiracy to Impede Officers of the United States, 18 USC § 372 (Count One), and Possession of Firearms and Dangerous Weapons in Federal Facilities, 18 USC §§ 930(b) and 2 (Count Two). (Docket No. 250). Count Three, alleging a violation of 18 USC § 924(c)(1)(A), Using and Carrying a Firearm in Relation to a Crime of Violence, has been dismissed by the district court. (Docket No. 671).

This prosecution arises from the alleged protest at the Malheur National Wildlife Refuge near Burns, Oregon, starting on or about January 2, 2016. Defendant Fry was arrested on February 11, 2016, and has been held in custody on this matter since that date.

This case has been assigned to Judge Anna J. Brown for trial. However, Judge Robert E. Jones has been handling all of the release hearings in this matter.

Several co-defendants in this matter are also charged in another prosecution initiated in the United States District Court, District of Nevada. (Case Number 2:16-cr-00046-GMN-PAL). The defendants charged in both cases are Ammon Bundy, Joseph O'Shaughnessy, Ryan Payne, Ryan Bundy, Brian Cavalier, and Peter Santilli. All of those defendants are in custody pursuant to orders of detention issued in the Nevada case. Defendant Fry is charged only in the present District of Oregon matter. He is the only defendant charged only Oregon who remains in custody.

Defendant Fry first appeared for a detention hearing before Magistrate Judge Stacie Beckerman on March 4, 2016. (Docket No. 240). Defendant filed a Motion for Release From Detention and presented a release plan. (ER-88). Defendant proposed that he return to his home in Ohio where he would be supervised by the local Pretrial Services office under conditions proposed by the court. Defendant submitted the results of a psychological evaluation that

had been done specifically to address the question of risk for purposes of the release decision. Defendant also submitted letters of support from friends, neighbors and family members that show defendant's connection to his community in Ohio and that attest to his character.

Magistrate Judge Beckerman denied release, finding that no condition or combination of conditions would assure the defendant as required and that no conditions would assure the safety of other persons and the community. (Docket No. 241; ER  ). Defendant promptly filed a Motion to Revoke Detention Order. (Docket No. 248). (ER-98 et seq.).

The parties appeared before Judge Robert E. Jones on April 4, 2016, on the Motion to Revoke. (Docket No. 364). In advance of the hearing, defendant provided an updated version of the psychological evaluation and the other materials presented to the magistrate judge. (The psychological evaluation is filed herewith under seal). At the hearing, defendant called his father to testify about the release plan and other matters. (ER-36). Defendant also brought Dr. Michelle Guyton, the author of the psychological evaluation, to answer any questions the court might have about defendant's mental health history and condition. Among other things, Dr. Guyton confirmed that defendant was not in need of any psychotropic medications. (ER-59).

The court denied defendant's Motion to Revoke on the record. (ER-63). Ten days later, the court issued supplemental findings in support of its ruling. (ER-30).

Defendant filed a Motion to Reopen Detention Hearing on June 21, 2016 (ER-26). The parties appeared before Judge Jones on July 13, 2016. Defendant presented to the court a log note prepared by the Mental Health Department at the Multnomah County Detention Center regarding defendant's mental health status. (The log note is filed herewith under seal, along with the psychological evaluation report). The report stated that the defendant "[c]urrently shows no evidence of disorganized thinking, psychosis or mood disturbances, and has demonstrated stability for most of his custody at MCDC." The court denied the motion on the record and in a subsequently filed Order. (ER-19; ER-1).

This appeal followed.

## Standard of Review

In *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985), the Court held:

> "[T]he applicable standard of review for pretrial detention orders is one of deference to the district court's factual findings, absent a showing that they are clearly erroneous, coupled with our right of independent examination of the facts, the findings, and the record to determine whether an order of pretrial detention may be upheld."

**Legal Standards Regarding Pre-Trial Release**

The Bail Reform Act of 1984, 18 USC §§ 3141 et seq.,

"mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required. * * * . The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *Motamedi*, 767 F.2d at 1405 (internal citations omitted).

This Court in *Motamedi* held that, "[o]nly in rare circumstances should release be denied. * * * Doubts regarding the propriety of release should be resolved in favor of the defendant." *Ibid*.

This is not a case in which there is a rebuttable presumption that there is no condition or combination of conditions that will reasonable assure the appearance of the person and the safety of the community. *See* 18 USC § 3142(e)(3) (creating that presumption when there is probable cause that defendant committed a crime of violence). Therefore, the government bears the burden of proving by clear and convincing evidence that defendant poses a safety risk to the community that cannot be overcome with conditions of release. § 3142(f)(2); *Motamedi*, 767 F.2d at 1406.

Section 3142(g) lists the factors the Court must consider in determining whether conditions of release may be imposed that will reasonably assure the appearance of the person and the safety of the community. The Court must take

into account available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. § 3142(g).

## Argument

The district court provided a number of reasons for denying defendant's motions for release from custody pending trial. However, defendant would submit that the predominant reason for denying release was that the court believed that defendant's mental health rendered him an unreasonable risk to the community and of flight. In this regard, the court fundamentally misunderstood the evidence defendant submitted in the form of the psychological evaluation. This Court is asked to conduct an independent review of the psychological evaluation and determine whether it sees the same risk that the district court saw with regard to this defendant. Defendant would submit that, to the extent that the psychological evaluation raises any concern about risk defendant poses to the community or for non-appearance, those risks readily can be met with conditions such as those proposed by the defendant.

The psychological report is submitted herewith under seal. In an effort to maintain defendant's privacy to the greatest extent possible, it will not be summarized in this brief filed in the public record, except to make the following points:

- Contrary to Judge Jones' statement on the record, defendant did not say to the evaluator that he feared an "invasion from outer space." (ER ). Defendant expressed that he believes that he has seen objects in the past that he described as UFOs. The evaluator questioned him closely about this and similar matters to discern whether defendant suffered from delusions that might lead to a particular diagnosis. (Evaluation, page 10). Ultimately, the evaluator disagreed with a diagnosis of schizophrenia. Nor did she arrive at any other Axis I diagnosis.

- Judge Jones stated that defendant had expressed that he was prepared to die so that he could be reincarnated as a woman. (ER-19). This also mischaracterizes the report. The evaluator wrote that defendant "made statements during the interview that suggested a desire to end his life and move on to what he feels is the next phase in the afterlife" in which he believed he would be female. (Evaluation, page 10). However, the evaluator also made clear that "Mr. Fry does not present as an imminent risk for suicide. He denied current experience of

>suicidal ideation and thoughts and said he wants to live." (Id., page 14).

The court also stated that defendant has threatened "suicide by cop" and "exhibited volatility and unpredictability making him a risk of danger to himself and others *when under stress*." (ER-2) (emphasis added). That part is supported by the record; however, defendant would submit that it does not follow that no combination of conditions would reasonably assure defendant's appearance at trial or the safety of the community. The point of the conditions proposed by defendant, including electronic monitoring and a restriction of movements, was to avoid situations in which defendant would face stressful situations that could give rise to a risk of non-appearance or danger to the community. The psychological report as well as the many letters of support from friends describe a manner who generally is stable, good-natured, and a good risk for supervised release. Also, as defendant explained, his expressions of suicidal ideation at the time of his arrest stemmed primarily from his fear that he would be raped in custody. (ER-20).

Further, at the most recent hearing, defendant submitted a report from the mental health professional the Multnomah County Jail confirming that defendant's present status is stable, that he is not suicidal, and that he is not being prescribed psychotropic medications. Thus, to the extent his condition at

the moment of arrest in February warranted caution with respect to release, defendant's status has improved and stabilized over time.

The court also relied on the fact that defendant had left Ohio where he was on probation for a misdemeanor offense without obtaining the permission from his probation officer. However, defendant proffered that the Ohio authorities had simply terminated his probation rather than move to extend it or seek a warrant for a probation violation, indicating that Ohio did not consider the violation to be serious. Furthermore, defendant submits that other defendants in this matter have been released despite having pending criminal matters in other jurisdictions or being on probation. For example, co-defendant Kenneth Medenbach was released (Docket No. 874) despite the fact that he was on probation for a federal misdemeanor matter during his alleged participation in the charged conspiracy. Co-defendant Jason Patrick was released (Docket No. 867) despite a pending charge in the state of Georgia for the felony crime of Making Terrorist Threats and the allegation that he violated the conditions of his release in that case by possessing weapons in the present case. (See Docket No. 8, page 12; Docket No. 152, page 3-4). Co-defendant Sean Anderson was released (Docket No. 509) despite an outstanding warrant out of Wisconsin for failing to appear on charges of resisting arrest and drug offenses. (Docket No. 507, page 6). That these defendants were released despite the fact they either were on probation or facing pending charges in other jurisdictions when they

came to Oregon demonstrates that the district court has been inconsistent in its release decisions in this matter, and that its decision to detain Mr. Fry rests on its misperception of his mental health history and status, rather than his Ohio probation.

Finally, in its April ruling denying release, the district court relied on the fact that defendant actively participated in the events with a weapon strapped to him. In the more recent hearing, the court mistakenly stated that defendant had brought a firearm with him from Ohio. There was no evidence that defendant had brought a firearm to the refuge, and his father testified to the contrary in the April hearing. There are videos depicting defendant with a firearm strapped across his shoulder. As defendant proffered in his original release memorandum, these videos were taken after law enforcement officials had shot and killed another refuge protester, LaVoy Finicum, when defendant and others remaining on the refuge feared that law enforcement similarly would use force to end the protest. Moreover, the district court's reliance on defendant's gun possession as a basis to detain him is inconsistent with how it has treated other defendants in this matter, many of whom are alleged to have possessed firearms during the protest. For example, videos from the same time frame as those showing defendant with a firearm also show Sean Anderson with a firearm telling viewers to come to the refuge and to shoot and kill any law enforcement officials who try to stop them. Mr. Anderson was released. Thus, again, it

Case: 16-30174, 07/26/2016, ID: 10064009, DktEntry: 2-1, Page 12 of 12

11

appears the court's misunderstanding of defendant's mental health condition, as opposed to gun possession, was the driving force behind the decision to release.

In addition to the foregoing arguments, defendant incorporates herein the memoranda he submitted to the district court in support of release (ER-88), and the statements of counsel on the record throughout the proceedings.

## Conclusion

Defendant respectfully requests this Court to conduct an independent review of the record of defendant's motions for release and to find that the government has failed to meet its burden of proving by clear and convincing evidence that no set of conditions can overcome any risk of danger to the community or others or of non-appearance.

DATED this 26th day of July, 2016.

        *s/ Per C. Olson*
Per C. Olson, OSB #933863
HOEVET OLSON HOWES, PC
1000 SW Broadway, Suite 1500
Portland, OR 97205
Tel. 503-228-0497
Email: per@hoevetlaw.com
      *Attorney for Appellant*